UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **CLARENCE J CEASAR III** | **CASE NO. 2:23-CV-01635** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **CITY OF LAKE CHARLES ET AL** | **MAGISTRATE JUDGE LEBLANC** |

MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 22] filed by defendants Nic Hunter and the City of Lake Charles. Plaintiff Clarence J. Ceasar III opposes the motion. Doc. 27.

I.
BACKGROUND

This suit arises from plaintiff's employment with the City of Lake Charles as director of community services, a position he held from June 15, 2020, until January 4, 2022. Plaintiff, who is Black, alleges that he was subjected to undue scrutiny, given negative performance reviews, denied pay raises, and ultimately terminated due to his race. Doc. 1, att. 4. On October 10, 2023, he filed suit against the city and Mayor Nic Hunter[1], in his official and personal capacities, raising claims of racial discrimination and hostile

---

[1] Mr. Hunter was succeeded as mayor by Marshall Simien, Jr., who was elected to that office on May 3, 2025. *See* About the Mayor, https://www.cityoflakecharles.com/department/division.php?structureid=246 (last visited Oct. 28, 2025). Under Federal Rule of Civil Procedure 25(d), Mayor Simien is automatically substituted as defendant for all claims against Mr. Hunter in his official capacity. Additionally, plaintiff's claims arise out of the city's official actions regarding his employment—he does not allege any basis for Mr. Hunter's liability in his personal capacity. *See Glover v. Laf. Consol. Gov't*, 2024 WL 3498777, at *2–*3 (W.D. La. Jul. 22, 2024) (internal citations omitted) (Title VII applies only to employers and the Fifth Circuit does not interpret the statute as imposing individual liability.); *see also McCain v. City of Lafayette*, 741 So.2d 720, 722 (La. Ct. App. 2d Cir. 1995) (noting that interpretations of Title VII may be used to construe Louisiana's similar anti-discrimination statute).

work environment under state and federal law. *Id.* Defendants removed the matter to this court on the basis of federal question jurisdiction, 28 U.S.C. § 1331. Doc. 1. They now move for summary judgment on all of plaintiff's claims. Doc. 22. Plaintiff opposes the motion. Doc. 27.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable

to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## III.
## LAW & APPLICATION

### A. Discrimination

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2. A plaintiff may prove intentional retaliation or discrimination under Title VII using either direct or circumstantial evidence. When circumstantial evidence is involved, the court uses the framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to analyze the claim. Under that framework, the plaintiff must first establish a prima facie case by showing, in the case of a discrimination claim, that (1) he is a member of a protected class; (2) he was qualified for the position; (3) he was discharged or otherwise suffered adverse employment action; and (4) he was treated less favorably than members outside of her protected class or was replaced by a member outside of that class. *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 363 (5th Cir. 2004). If the plaintiff makes this showing, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory motive for its action. *McCoy v. City of Shreveport*, 492

F.3d 551, 557 (5th Cir. 2007). At the final stage, the burden shifts back to plaintiff to show that the employer's explanation is not true and is instead a pretext for the real, discriminatory purpose. *Id.* The same framework applies to discrimination claims brought under the Louisiana Employment Discrimination Law ("LEDL"). *See, e.g.*, *DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007) ("Claims of racial discrimination in employment, pursuant to . . . the [LEDL], are governed by the same analysis as that employed for such claims under Title VII."); *Clark v. City of Alexandria*, 116 F.4th 472, 485–86 (5th Cir. 2024) ("Because the LEDL is similar in scope to the federal prohibition against discrimination set forth in Title VII, Louisiana courts have looked to the jurisprudence construing the federal statute.") (cleaned up).

Plaintiff's claims of racial discrimination arise from the unfavorable performance evaluations he received from Assistant City Administrator Kimberly Dellafosse, who is also Black. These evaluations then led to his termination. Plaintiff's predecessor, Percy Brown, retired from the City in July 2019. Doc. 22, att. 7, p. 25. From that time until plaintiff was hired in July 2020, Dellafosse also served as interim Director of Community Services. *Id.* at 81–82; doc. 22, att. 5, p. 53. Dellafosse then served as plaintiff's immediate supervisor.[2] Doc. 22, att. 7, p. 83. After plaintiff's termination, she conducted performance evaluations of his successor, Michael Castille. *Id.*

---

[2] The city administration's organizational chart establishes that Dellafosse, as assistant city administrator, serves under the city administrator, John Cardone, who reports to the mayor. Doc. 22, att. 8, p. 4.

Dellafosse first evaluated plaintiff on April 30, 2021, about ten months into his employment with the city and several months into the city's recovery from Hurricane Laura.[3] *See* doc. 22, att. 4, pp. 35–40. The form provides:

> As stated in the City of Lake Charles Pay Plan, the pay rate of a full-time employee shall increase one (1) step, two percent (2%), in the range of the Pay Plan that his/her position has been assigned under the following provisions:
> A. The employee has occupied a Full time position for twelve (12) consecutive months, and
> B. The employee's current performance warrants the evaluation increase, and
> C. The employee has not received six (6) unexcused call-ins as outlined in the Attendance Policy in Section 5.1 of the Personnel Policy Manual, and
> D. The employee has not received a disciplinary suspension in the last 365 days.

*Id.* at 35. The form then provides six domains in which the employee is to be rated on a scale of one (Unacceptable) to five (Outstanding). *Id.* at 35–40. Plaintiff received ratings of one or two (Improvement Needed) for five of the domains, and a three (Meets Expectations) for "Attitude and Judgment." *Id.* His score amounted to a total rating of "Improvement Needed." *Id.* at 40. In the comments section, Dellafosse wrote:

> Clarence needs to be proactive in his position. He needs to create a documented plan of recovery for [the] department that can be reviewed by the Mayor and Administration. In this plan, he should include strat[egic] plan to reopen parks, recreation centers, the beach, the Civic Center, and any other properties manag[ed] by his department. Clarence needs to engage with staff and recovery consultants at least once a week [to get] a better understanding of how his department will recover. What is being required of Clarence will [involve] him being more intentional in his efforts. He must develop an

---

[3] Hurricane Laura made landfall in Cameron Parish on August 27, 2020, with sustained winds of 150 mph (130 knots). It was the strongest hurricane to strike Southwest Louisiana since records began in 1851 and remained a Category 4 as it passed over the Lake Charles metropolitan area. *See* Hurricane Laura 2020, https://www.weather.gov/lch/2020Laura (last visited October 29, 2025).

organized plan that enables him to better manage all facets of his department and staff.

*Id.* at 39.[4] Dellafosse then set forth an Employee Improvement Plan, with seven objectives to be met before the next evaluation. *Id.* at 43. The evaluation was also signed by the city's chief administrative official, John Cardone. *Id.* at 40.

In August 2021, Mayor Hunter had lunch with plaintiff to discuss plaintiff's job performance. *Id.* at 18–20. He then sent an email to plaintiff, reinforcing certain expectations. *Id.* at 34. In particular, he noted that Dellafosse was entitled to speak for him and that he expected to see "more robust programming" for the city parks. *Id.* Hunter forwarded this email to Dellafosse and Cardone, stating: "I'm giving [plaintiff] another 'fresh start' chance, so we'll see." *Id.*

At the next evaluation, conducted on December 13, 2021, plaintiff received ratings of 1 or 2 in all six domains and a total rating of "Unsatisfactory." *See id.* at 44–50. Based on this rating, plaintiff was marked as ineligible for a salary increase. *Id.* at 44. On that date, Hunter also forwarded emails between himself and plaintiff to Delafosse over the last few months as evidence of his dissatisfaction with plaintiff's performance. *Id.* at 51–54. These included plaintiff's failure to (1) make sure a park was "spotless" in preparation for a donor's visit, (2) follow up on a request for information regarding restarting a park program, and (3) fulfill the mayor's request for help with a Christmas program, beyond the stocking handout already planned. *Id.* Additionally, the city obtained surveillance of plaintiff in October and November 2021 and discovered several instances in which he left

---

[4] A small portion of the comments at the righthand margin of the form were cut off.

work hours early even though his timesheets reflected an 8-hour workday. Doc. 22, att. 8, pp. 12–42. The report also showed that plaintiff spent several hours each week driving his city-owned vehicle around on what appeared to be personal errands. *Id.*

After receiving his second negative evaluation, plaintiff submitted a written grievance on December 21, 2021. There he asserted that Dellafosse, whom he titled a "project specialist," was not his "rightful supervisor" and was not qualified to supervise a department head. *Id.* at 43. Instead, he stated that Cardone was his proper supervisor according to city ordinances. *Id.* The grievance made no mention of race or other discrimination. It was apparently denied, and plaintiff was terminated from his position on January 24, 2022. *Id.* at 45. He was replaced by Michael Castille, who is white. Doc. 22, att. 5, p. 49.

Defendants argue that plaintiff cannot set forth a prima facie case or rebut the legitimate reasons for his termination. As for the prima facie case, the only element defendants appear to dispute is whether plaintiff was qualified for his position. To this end they point to the poor ratings plaintiff received during the two performance evaluations conducted over the year and a half he held his position. As another district court recently noted, "[s]ome circuits have held that to be a qualified employee under Title VII, a plaintiff must 'prove that he was performing his job at a level which met his employer's legitimate expectations.'" *Pfang v. Lamar Inst. of Tech.*, 2025 WL 2734658, at *11 (E.D. Tex. Sept. 24, 2025) (quoting *Meadows v. Ford Motor Co.*, 21 F. App'x 302, 304 (6th Cir. 2001)); *see McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir. 1990); *Salvadori v. Franklin Sch. Dist.*, 293 F.3d 989, 996-97 (7th Cir. 2002); *Merritt v. Aylmer*, 960 F.2d 143,

1992 WL 83271, at *3 (1st Cir. 1992) (quoting *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1014 (1st Cir. 1979)). The Fifth Circuit, however, has rejected this approach. *See Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1505–06 (5th Cir. 1988), *abrogated on other grounds as recognized in Owens v. Circassia Pharm., Inc.*, 33 F.4th 814, 829 n. 15 (5th Cir. 2022). The court reasoned that the burden imposed by a definition of "legitimate expectations" could not be reconciled with the Supreme Court's efforts in *McDonnell Douglas* "to simplify presentation of an employment discrimination case" and that "[p]lacing a plaintiff's 'qualifications' in issue at both the prima facie case and pretext stages of a termination case is an unnecessary redundancy." *Id.* at 1505. Here there is no argument that plaintiff lacked the basic qualifications for the job, such as education, professional license, or physical ability. Accordingly, the court will proceed to the second step.

      Defendants base their explanation for plaintiff's firing on his poor performance evaluations, as supplemented by the emails showing the mayor's dissatisfaction with his work and the investigation showing his failure to properly account for time away from the office. Plaintiff disputes the mayor's reasons for dissatisfaction with his job and maintains that Dellafosse was not qualified to evaluate him. The defendant's burden at this stage, however, "is only one of production, not persuasion, and involves no credibility assessment." *E.g.*, *Wojciechowski v. Nat'l Oilwell Varco, L.P.*, 763 F.Supp.2d 832, 859 (S.D. Tex. 2011) (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000)). The defendant must provide "legitimate, nondiscriminatory reasons for its decisions" and those reasons must be "clear and reasonably specific." *Outley v. Luke & Assoc., Inc.*, 840 F.3d 212, 218 (5th Cir. 2016) (quoting *Okoye v. Univ. of Tex. Houston*

*Health Sci. Ctr.*, 245 F.3d 507, 513 (5th Cir. 2001)). "Job performance is a legitimate reason for termination." *Id.* (quoting *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007)) (cleaned up). The justifications provided by defendant are reasonably specific, point to numerous deficiencies in plaintiff's job performance, and have nothing to do with race. Defendants have therefore satisfied their burden.

The burden now shifts to plaintiff "to present substantial evidence that his employer's proffered reason is a pretext for discrimination." *Matthews v. City of West Point, Miss.*, 863 F.Supp.2d 572, 585 (N.D. Miss. 2012) (citing *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Laxton*, 333 F.3d at 579 (internal quotations omitted). In the absence of direct evidence of discrimination, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false may be sufficient to infer discrimination." *Okoye*, 245 F.3d at 513–14 (internal quotations omitted). Even such a showing may not prevent summary judgment, however. *Price v. FedEx Corp.*, 283 F.3d 715, 724 (5th Cir. 2002) (citing *Reeves*, supra, 530 U.S. at 148). As the Supreme Court explained in *Reeves*:

> Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

530 U.S. at 148.

Plaintiff attempts to refute the negative evaluations and other criticisms. He testified that Mayor Hunter did not even attend the Christmas event over which he later complained, and that his department had fulfilled the mayor's request by having an activity and decorations but Dellafosse complained to the mayor because of a lack of Christmas tablecloths. Doc. 22, att. 4, pp. 84–85. In regard to the donor visit, Plaintiff testified that he had stationed an employee at the park to ensure its cleanliness. *Id.* at 78–80. That employee failed to pick up a single beer bottle, which was left on the basketball court by a visitor to the park on the same day as the donor visit. *Id.* Finally, plaintiff maintained that he had followed up on the requested programming but had simply failed to update the mayor and had pushed the Partners in Parks program to the best of his abilities given limitations imposed by the COVID-19 pandemic and the city's recovery from Hurricane Laura. *Id.* at 58–60; 78–80, 87.

Plaintiff also disagreed with Dellafosse's evaluations, maintaining that she was unqualified to review him because she did not deal with him day-to-day and lacked experience in his department. *Id.* at 30–32, 67–69. Finally, he notes that he was the only department head to be evaluated by Dellafosse. *See* doc. 27, att. 1, pp. 112–13; doc. 27, att. 3, pp. 19–20. As Cardone testified, however, Dellafosse had been assigned by the mayor to supervise community services, arts and culture, community development, and quality of

life programming.[5] Doc. 27, att. 3, pp. 15–17, 24–25. She had served as interim director of that department for one year before plaintiff was hired. Doc. 22, att. 7, pp. 81–82. Cardone also testified that he signed off on Dellafosse's evaluations and agreed with her assessment of plaintiff's performance. Doc. 27, att. 3, pp. 17–18. Although plaintiff was the only Black department head during his brief tenure with the city, Dellafosse and plaintiff's predecessor Percy Brown are also Black. Doc. 22, att. 4, pp. 14, 111–13. Hunter also hired Fire Chief Delton Carter and Community Development Director Mark Tezeno, who are both Black, during his tenure as mayor. Doc. 22, att. 5, pp. 52–53.

      Plaintiff provides no substantive dispute for his absenteeism. Apparently unaware of the city's investigation, he testified that whatever was submitted to payroll for the hours he worked was correct, and that he never left for the day as early as 1:00 or 2:00 pm. Doc. 22, att. 4, pp. 89–91. And although he offers specific refutations to the mayor's criticisms, he fails to present anything beyond his subjective belief to show that Dellafosse was not qualified to evaluate his performance as a department head. The defendants provide a sound explanation as to why Dellafosse evaluated plaintiff but not any of the other department heads. Her evaluations were co-signed by the city's chief administrative official, who testified that he agreed with her conclusions. Dellafosse is also Black and was one of a number of African-Americans in positions of authority within the Hunter administration. The record has revealed ample basis for plaintiff's termination and material

---

[5] Cardone, rather than Dellafosse, evaluated plaintiff's predecessor Percy Brown. Doc. 27, att. 3, pp. 19–20. Cardone testified that this was because Brown was already in place when Dellafosse became assistant city administrator, and that she began to take a larger role with recreation around the time plaintiff was hired. *Id.* at 21–22.

to refute any inference of discrimination. Plaintiff therefore fails to carry his burden and defendants are entitled to summary judgment on this claim.

### B. Hostile Work Environment

Plaintiff also appears to raise a hostile work environment claim in his complaint, though he does not point to any factual allegations separate from those supporting his wrongful termination claim. *See* doc. 1, att. 4. Additionally, defendants seek summary judgment on "all claims" but do not brief the hostile work environment claim. Doc. 22, att. 1, p. 4. Accordingly, the court will consider whether a viable hostile work environment claim exists based on the allegations and record presented.

To establish a prima facie hostile work environment claim, as alleged here, the plaintiff must show that (1) he belongs to a protected group; (2) he was subject to unwelcome harassment; (3) the harassment was based on her race, gender, etc.; (4) the harassment was severe enough to affect a term, condition, or privilege of employment; and (5) the employer knew or should have known of the discrimination but failed to take prompt remedial action. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). On the severity element, an employer violates Title VII "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993). Because Title VII is "only meant to bar conduct that is so severe [or] pervasive that it destroys a protected class member's opportunity to succeed in the workplace," courts have set a high standard for determining what constitutes a hostile work environment. *Lewis v. M7 Prods., LLC*, 427

F.Supp.3d 705, 720 (M.D. La. 2019) (internal quotation omitted). The conduct must be both subjectively and objectively offensive, meaning that the victim perceived the environment as hostile or abusive and that a reasonable person would do likewise. *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007). Courts examine such a claim based on the totality of the circumstances, looking to the frequency and severity of the conduct, whether it was physically threatening or humiliating, and whether it "unreasonably [interfered] with an employee's work performance." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347 (5th Cir. 2007). "No single factor is determinative." *WC&M Enters., Inc.*, 496 F.3d at 399.

    Plaintiff's allegations are centered on the fact that he believes Ms. Dellafosse was unqualified to evaluate him and that her evaluations were unfair. *See* doc. 1, att. 4, ¶¶ 5–6. These bare-bones allegations are contradicted by the record, which shows that Ms. Dellafosse had sufficient familiarity with plaintiff's department, that her oversight of that department was assigned by the mayor, and that her evaluations of plaintiff were co-signed by chief administrative officer John Cardone, who testified that he agreed with her assessment. Accordingly, without even reaching the severity prong, the court cannot find that these actions constituted harassment. Defendants are likewise entitled to judgment as a matter of law on any hostile work environment claim.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 22] will be **GRANTED** and all claims will be **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED** in Chambers on the 3rd day of November, 2025.

_____
JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE